**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FABIAN ALEXANDER COOK** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:21-cv-361** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **SAM CONDO,** *et al.* | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Presently before the court is *pro se* Plaintiff Fabian Alexander Cook ("Cook")'s motion for leave to file a supplemental complaint. For the reasons that follow, the motion will be denied.

## I.     Background and Procedural History

Cook initiated this case through the filing of a civil rights complaint under 42 U.S.C. § 1983 on February 26, 2021 against Defendants Sam Condo ("Condo"), Justin Brown ("Brown"), and Michelle Dunn ("Dunn"), all of whom are employed at the State Correctional Institution-Rockview ("SCI-Rockview"), the prison where Cook is currently incarcerated and where he was incarcerated at all relevant times. (Doc. No. 1.)  Cook's claims arise from his transfer into the prison's therapeutic community program, temporary transfer out of the program, and subsequent transfer back into the program.  (*Id.*)  During the period of time relevant to Cook's claims, Condo was serving as the unit manager for SCI-Rockview's I-Block housing unit, Brown was serving as a counselor in the therapeutic community

program, and Dunn was serving as the manager of the therapeutic community program. (*Id.* at 10.)

The complaint alleges that in May 2020, the Defendants transferred Cook to I-Block, which is a dormitory-style housing unit, so that he could participate in the therapeutic community program, which was identified as a prerequisite for Cook securing parole. (Doc. No. 1 at 10-11.) The transfer allegedly placed Cook at higher risk of contracting COVID-19 due to the dormitory-style housing, which allegedly made it difficult for inmates to socially distance from one another. (*Id.* at 11-12.) Cook challenged the conditions of confinement in I-Block through a state petition for writ of habeas corpus in the Centre County Court of Common Pleas ("the state court") on June 3, 2020, which was docketed in that court on June 8, 2020. (*Id.* at 12.)

In the therapeutic community program, inmates were expected to participate in morning and afternoon meetings in which the inmates would sit in a circle. (*Id.* at 12.) Social distancing in this setting was difficult, so prison officials leading the meetings allegedly informed the inmates that they could physically space themselves out if they felt uncomfortable sitting close to each other during the pandemic. (*Id.* at 12-13.) Following this instruction, Cook physically spaced himself out during a meeting. (*Id.* at 13.) Despite the verbal instructions that he

was allowed to do so, however, Cook was allegedly given a "check for success"[1] for spacing himself out.  (*Id.* at 13.)  Cook did not accept responsibility for his behavior given the prior instructions that he was allowed to socially distance from the other inmates.  (*Id.*)  Cook spoke with Defendant Dunn about his check for success.  (*Id.*)  Dunn allegedly ripped up the paper on which the check for success had been reported and excused Cook's behavior.  (*Id.*)

Given the difficulties in practicing social distancing in I-Block as well as the fact that Cook was given a check for success for doing so, he filed a motion for temporary restraining order in his habeas corpus case in the state court in June 2020, seeking either immediate release from custody or an injunction requiring SCI-Rockview employees to allow Cook to socially distance from other inmates in the prison.  (*Id.* at 13-14.)  The judge presiding over the habeas corpus proceeding scheduled a hearing on the petition for August 18, 2020.  (*Id.* at 14.)

Shortly after Cook moved for a temporary restraining order in the habeas corpus proceeding, Defendants allegedly became aware of the proceeding, at which point they allegedly put "the full court press" on Cook with the objective of

---

[1] The complaint alleges that a check for success is a feature of the therapeutic community program in which an inmate's problematic behavior is mentioned during the morning meeting and the offending inmate must either admit to his behavior or write a 250-word essay.  (Doc. No. 1 at 13.)  Checks for success can lead to further consequences in the therapeutic community program, including "learning experiences," termination warnings, and termination from the program.  (*Id.*)  Termination from the program can in turn lead to a negative completion report, which might negatively affect an inmate's parole eligibility.  (*Id.*)

removing him from the therapeutic community program so as to defeat or weaken his petition for writ of habeas corpus. (*Id.* at 15.) As part of this alleged effort, Defendant Dunn temporarily transferred Cook out of the therapeutic community program and out of I-Block for approximately two weeks, which Cook alleges was done in retaliation for the filing of the habeas corpus petition. (*Id.* at 16-17, 19.)

At the time he was transferred out of the therapeutic community program, Cook allegedly had not received any significant misconduct charges in the program and had not committed any major rules violations that would warrant termination from the program. (*Id.* at 17.) The only infractions Cook had committed while in the program were "minute," such as staying on the phone past his scheduled time and inadvertently missing a group meeting. (*Id.*) Nevertheless, he was not given a termination warning before being transferred out of the program, despite the fact that other inmates who had been transferred out were given such a warning. (*Id.*) This included an inmate who had allegedly choked another inmate and an inmate who had fought another inmate, both of whom received a termination warning prior to their transfer out of the program. (*Id.*)

When he was transferred out of the therapeutic community program, Cook was housed in A-Block, which is allegedly a much more restrictive environment than I-Block, especially during the COVID-19 pandemic. (*Id.* at 19.) A-Block allegedly has more restrictions on phone privileges, recreation, visitation, and law

4

library use than I-Block.  (*Id.*)  The complaint alleges that A-Block was the most restrictive unit during the pandemic and that Cook would have preferred to be housed in a less restrictive environment.  (*Id.* at 20-21.)  The complaint further alleges that the conditions of A-Block violate the Eighth Amendment because there are bird droppings on the walls of the unit and the unit does not have appropriate ventilation.  (*Id.* at 21-22.)

Cook was allegedly reenrolled in the therapeutic community program on August 20, 2020, approximately thirteen days after being transferred out of the program.  (*Id.* at 25.)  Cook was not transferred back to I-Block when he was reenrolled in the program and was instead told that he would remain housed in A-Block and would be given the written work for the therapeutic community program so that he could complete it independently in his cell.  (*Id.*)  Cook alleges that the decision to keep him in A-Block while reenrolling him in the therapeutic community program was "evidence that this option could have been explored upon plaintiff expressing his concerns in writing to defendant Ms. Dunn before he was moved to the [therapeutic community] program initially."  (*Id.*)  It is also evidence, according to Cook, that Dunn "blatantly disregarded both plaintiff's mental [and] physical health" when he was first moved to I-Block and subsequently moved to A-Block, "which essentially deprived [him] of the chance to elect a more sanitary and less restrictive housing unit."  (*Id.*)  Thus, Cook alleges, the conditions of A-

Block were forced upon him, which he asserts constitutes intentional infliction of emotional distress.  (*Id.*)

Cook alleges that two more incidents occurred after he was reenrolled in the therapeutic community program that amount to retaliation in violation of the First Amendment.  First, he alleges that from November 15, 2020 to November 23, 2020, he refused to have his temperature taken during COVID-19 screening protocols and that, as a result, he was "retaliated against via not being permitted to shower, use the phone, or receive his commissary."  (*Id.* at 32.)  He was allowed to resume normal activities when he "allowed himself to be subjected" to the procedures.  (*Id.*)

Second, Cook alleges that he was transferred to a different cell in A-Block on November 26, 2020 that was formerly occupied by an inmate named William McIntyre ("McIntyre").  (*Id.*)  McIntyre had been moved out of the cell when he tested positive for COVID-19 and was moved into quarantine.  (*Id.*)  Prison officials represented to Cook that the cell had been thoroughly cleaned prior to him moving in, but when he entered the cell he found prescription medication that was prescribed to McIntyre.  (*Id.*)  After finding the medication, Cook filed an emergency petition for injunctive relief in the state court asserting that CDC guidelines were not being followed in the prison.  (*Id.*)  In support of his petition, Cook taped the prescription medication that he had found to a piece of paper and

mailed it to the court.  (*Id.*)  Upon receiving the medication, the prothonotary of the court contacted the prison and informed officials that the court had received the medication from Cook.  (*Id.*)  Cook was subsequently charged with misconduct for mailing the medication, which he alleges was done "in retaliation."  (*Id.*)

Cook brings six claims for relief in his complaint: (1) that Defendants violated 42 Pa.C.S. § 6505 by removing him from the therapeutic community program so as to hinder his ability to obtain habeas corpus relief; (2) that Defendants violated his rights to due process and equal protection when they transferred him out of the therapeutic community program; (3) that Defendants retaliated against him in violation of the First Amendment; (4) that Defendants violated his right of access to the courts; (5) that Defendants committed intentional infliction of emotional distress; and (6) that Defendants were deliberately indifferent to the conditions of Cook's confinement in A-Block in violation of the Eighth Amendment.  (*Id.* at 29-30.)  He seeks a declaration that Defendants' actions violated the Constitution, injunctive relief requiring Defendants to "revise the rules of the [therapeutic community] program" to do away with checks for success, injunctive relief preventing Pennsylvania state officials from using his temporary transfer out of the therapeutic community program against him in his parole proceedings, criminal prosecution of the Defendants for violation of 42

Pa.C.S. § 6505, nominal damages, compensatory damages, and punitive damages. (*Id.* at 30, 34-35.)

Following the filing of his original complaint, Cook moved for leave to file a supplemental complaint on July 9, 2021.  (Doc. No. 23.)[2]  Cook seeks to raise claims against Joshua Stover ("Stover") a lieutenant in SCI-Rockview; Jennifer Alexander ("Alexander"), a unit manager in SCI-Rockview; Mark Garman ("Garman"), the former superintendent of SCI-Rockview;[3] Leo Dunn, a member of the Pennsylvania Board of Probation and Parole;[4] and Terry Smith ("Smith"), a member of the Pennsylvania Board of Probation and Parole.  (Doc. No. 14 at 2.)

The proposed supplemental complaint alleges that on the day the medication was returned from the state court to the prison, Stover retaliated against Cook for

---

[2] Cook filed a document labeled "supplemental complaint" on June 8, 2021, (*see* Doc. No. 14), but did not move for leave to file a supplemental complaint until July 6, 2021. (*See* Doc. No. 23.) In his motion for leave to supplement, Cook explains that he thought he could supplement his complaint as a matter of course under Federal Rule of Civil Procedure 15.  (*Id.* at 1.)  This is incorrect, as leave of the court is always required for a party to file a supplemental complaint. *See* Fed. R. Civ. P. 15(d); *Mallinckrodt Inc. v. E-Z EM Inc.*, No. 671 F. Supp. 2d 563, 569 (D. Del. 2009).  Nevertheless, because it appears that Cook's failure to file a contemporaneous motion for leave to supplement the complaint was due to excusable neglect, the court will consider the motion for leave to supplement on its merits.

[3] The proposed supplemental complaint alleges that Garman retired in March 2021.  (Doc. No. 14 at 2.)

[4] Because another person with the last name "Dunn" is already named as a defendant in this action, the court will refer to Leo Dunn by his full name throughout the remainder of this opinion except where context makes this unnecessary.  There is no allegation in the original complaint or the proposed supplemental complaint that Michelle Dunn and Leo Dunn are related to one another.

mailing the medication to the state court by charging him with misconduct for unauthorized use of the mail, possession of contraband, and failure to report the presence of contraband.  (*Id.* at 6.)  Cook alleges it was clear that Stover brought the charges as retaliation because Stover misrepresented the relevant facts in his report of the incident.  (*Id.* at 7.)  In particular, Cook alleges that Stover failed to note that the medication was sent to the state court as evidence to support Cook's legal claims, which "made it seem as though Plaintiff was transporting drugs through the mail as oppose[d] to submitting evidence in support of his allegations." (*Id.*)  Cook further alleges that a correctional officer named Ryder made statements to him indicating that Stover had brought the misconduct charge as retaliation for Cook having mailed evidence to the court.  (*Id.* at 9.)  Cook was subsequently found guilty of the charged misconduct in a prison disciplinary hearing.  (*Id.* at 8.)

On March 4, 2021, Cook allegedly met with Alexander and counselor Eric Makosy ("Makosy"), both of whom had the authority to recommend whether Cook would receive parole.  (*Id.*)  Alexander and Makosy allegedly told Cook that they would not recommend parole due to the misconduct charge Cook had received for mailing the medication.  (*Id.*)  They also allegedly told him that if he had not received the misconduct charge, he likely would have been paroled.  (*Id.*)  Cook alleges that Alexander's decision not to support him for parole was retaliation for mailing evidence to the state court.  (*Id.* at 11.)  Cook further alleges that he

appealed the prison disciplinary decision to Garman, who upheld the decision to find Cook guilty. (*Id.* at 12.) Cook alleges that Garman's action in upholding the misconduct charge amounts to retaliation. (*Id.*)

On May 3, 2021, Cook had a parole interview with Leo Dunn and Smith. (*Id.*) Dunn allegedly told him that but for the misconduct charge against him and the prison's negative recommendation, "it would have been an easy" decision to grant Cook parole. (*Id.* at 13.) Dunn allegedly stated, however, that he could not "override" the prison's negative recommendation, and accordingly voted against granting Cook parole. (*Id.*) Cook explained the circumstances in which he had mailed the medication to the court, but he was nonetheless denied parole and was notified that his parole would not be considered again until May 2022. (*Id.*) Cook alleges that the parole process violated his right to due process under the Fourteenth amendment and constitutes cruel and unusual punishment in violation of the Eighth Amendment. (*Id.* at 15.)

The proposed supplemental complaint seeks to bring claims for retaliation in violation of the First Amendment against Stover, denial of due process in violation of the Fourteenth Amendment and cruel and unusual punishment in violation of the Eighth Amendment against Alexander, and denial of due process in violation of the Fourteenth Amendment and cruel and unusual punishment in violation of the Eighth Amendment against Garman, Leo Dunn, and Smith. (*Id.* at 19-20.)

## II.        Discussion

Under Federal Rule of Civil Procedure 15(d), the court may "on just terms" grant a party leave to supplement a pleading to set out "any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Decisions on whether to grant leave to supplement are left to the sound discretion of the district court, but should be liberally construed in favor of granting the motions. *Garrett v. Wexford Health*, 938 F.3d 69, 89 (3d Cir. 2019). When considering whether to grant leave to supplement, a court should consider whether supplementation would promote a justiciable disposition of the case, whether it would cause delay or inconvenience, and whether it would cause prejudice to the parties. *Nottingham v. Peoria*, 709 F. Supp. 542, 544 (M.D. Pa. 1988). Motions for leave to supplement should generally be granted unless there is a showing of "undue delay, bad faith, or futility." *Kump v. State Farm Fire & Cas. Co.*, 18 F. Supp. 3d 604, 607 (M.D. Pa. 2014).

Denial of leave to supplement is appropriate where the subject matter of the proposed supplemental complaint is unrelated to the original complaint. *See Nottingham*, 709 F. Supp. at 544 ("[A] court may deny leave to file a supplemental pleading where that pleading relates only indirectly, if at all, to the original complaint and the alleged cause of action arose out of an entirely unrelated set of facts and related to a defendant not implicated in the original complaint."); *accord*

11

*Yates v. Painter*, No. 3:05-CV-01723, 2009 WL 1321553, at *2-3 (M.D. Pa. May 12, 2009).  Thus, supplementation is not appropriate where the proposed supplemental complaint "names new defendants and is based upon unrelated facts." *Nottingham*, 709 F. Supp. at 544-45.

Having reviewed Cook's motion, the court will deny leave to supplement. Supplementation is inappropriate as to Cook's proposed claims against Alexander, Garman, Leo Dunn, and Smith because the proposed claims are unrelated to the subject matter of the original complaint.  All of the factual allegations against those individuals pertain to Cook's parole process and subsequent denial of parole, but the factual allegations in Cook's original complaint pertain to his transfers in and out of the therapeutic community program, the alleged retaliation against him based on his filing a petition for writ of habeas corpus in the state court, the conditions of his confinement, and his actions in mailing medication to the state court.  To the extent that Cook's parole process was mentioned in the original complaint, it was only to suggest that checks for success and disciplinary sanctions could negatively affect his chances for parole in the future; there were no allegations that directly pertained to the parole process. (*see* Doc. No. 1 at 13 (noting that checks for success could lead to termination from the therapeutic community program, which "would result in a negative completion report, thereby effecting parole eligibility, possibly"); *id.* at 31 (noting that Defendants' actions in

"kicking plaintiff out" of the therapeutic community program "has the potential to effect plaintiff's parole eligibility"); *id.* at 33-34 (noting that sanctions for mailing medication to state court could negatively affect his chances of obtaining parole).)

Cook argues to the contrary that his proposed supplemental claims are related to his original claims because both "involve constitutional violations plaintiff was subjected to as a result of him exercising his right to access the courts." (Doc. No. 14 at 5.)  The court disagrees.  There is no apparent factual connection between the actions that Defendants Condo, Brown, and Dunn allegedly took and the actions that Alexander, Garman, Leo Dunn, and Smith allegedly took, and Cook's allegation that both groups of defendants acted in retaliation for Cook's state court litigation is not sufficient to establish such a connection.

Thus, because Cook's proposed claims against Alexander, Garman, Leo Dunn, and Smith name new defendants and are based on facts that are unrelated to the original complaint, leave to supplement as to those individuals will be denied. *See Nottingham*, 709 F. Supp. at 544-45 (noting that supplementation is not appropriate where the proposed supplemental complaint "names new defendants and is based upon unrelated facts").

Cook's proposed claim against Stover does not suffer from the same defect, as it clearly relates to facts alleged in the original complaint.  Nevertheless,

supplementation as to Stover is also inappropriate because Stover's alleged wrongful actions all occurred *before* the original complaint was filed.  Rule 15(d) allows supplemental pleadings "setting out any transaction, occurrence, or event that happened *after the date of the pleading to be supplemented*."  Fed. R. Civ. P. 15(d) (emphasis added).  Claims that set forth additional events that occurred before the original complaint was filed are properly raised through an amended complaint rather than a supplemental complaint.  *See Garrett*, 938 F.3d at 82 ("[R]ather than set forth additional events that occurred before the original complaint was filed, as does a Rule 15(a) amendment, a supplemental pleading under Rule 15(d) presents more recent events.").  Accordingly, the court will deny Cook's motion for leave to supplement in its entirety.

## III.    Conclusion

For the foregoing reasons, Cook's motion for leave to supplement (Doc. No. 23) is denied.  An appropriate order follows.

s/ Sylvia H. Rambo
United States District Judge

Dated: November 30, 2021