## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FABIAN ALEXANDER COOK** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:21-cv-361** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **SAM CONDO**, *et al.* | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Presently before the court is Defendants' motion to dismiss for failure to state a claim upon which relief may be granted. For the reasons that follow, the motion will be granted, and the complaint will be dismissed in part without prejudice.

## I.      Background and Procedural History

*Pro se* Plaintiff Fabian Alexander Cook ("Cook") initiated this case through the filing of a civil rights complaint under 42 U.S.C. § 1983 on February 26, 2021 against Defendants Sam Condo ("Condo"), Justin Brown ("Brown"), and Michelle Dunn ("Dunn"), all of whom are employed at the State Correctional Institution-Rockview ("SCI-Rockview"), the prison where Cook is currently incarcerated and where he was incarcerated at all relevant times. (Doc. No. 1.) Cook's claims arise from his transfer into the prison's therapeutic community program, temporary transfer out of the program, and subsequent transfer back into the program. (*Id.*) During the period of time relevant to Cook's claims, Condo was serving as the unit

manager for SCI-Rockview's I-Block housing unit, Brown was serving as a counselor in the therapeutic community program, and Dunn was serving as the manager of the therapeutic community program.  (*Id.* at 10.)

The complaint alleges that in May 2020, the Defendants transferred Cook to I-Block, which is a dormitory-style housing unit, so that he could participate in the therapeutic community program, which was identified as a prerequisite for Cook securing parole.  (*Id.* at 10-11.)  The transfer allegedly placed Cook at higher risk of contracting COVID-19 due to the dormitory-style housing, which allegedly made it difficult for inmates to socially distance from one another.  (*Id.* at 11-12.)  Cook challenged the conditions of his confinement in I-Block through a state petition for writ of habeas corpus in the Centre County Court of Common Pleas ("the state court") on June 3, 2020, which was docketed in that court on June 8, 2020.  (*Id.* at 12.)

In the therapeutic community program, inmates were expected to participate in morning and afternoon meetings in which the inmates would sit in a circle.  (*Id.* at 12.)  Social distancing in this setting was difficult, so prison officials leading the meetings allegedly informed the inmates that they could physically space themselves out if they felt uncomfortable sitting close to each other during the pandemic.  (*Id.* at 12-13.)  Following this instruction, Cook physically spaced himself out during a meeting.  (*Id.* at 13.)  Despite the verbal instructions that he

2

was allowed to do so, however, Cook was allegedly given a "check for success"[1]

for spacing himself out.  (*Id.* at 13.)  Cook did not accept responsibility for his

behavior given the prior instructions that he was allowed to socially distance from

the other inmates.  (*Id.*)  Cook spoke with Defendant Dunn about his check for

success.  (*Id.*)  Dunn allegedly ripped up the paper on which the check for success

had been reported and excused Cook's behavior.  (*Id.*)

Given the difficulties in practicing social distancing in I-Block as well as the

fact that Cook was given a check for success for doing so, he filed a motion for

temporary restraining order in his habeas corpus case in the state court in June

2020, seeking either immediate release from custody or an injunction requiring

SCI-Rockview employees to allow Cook to socially distance from other inmates in

the prison.  (*Id.* at 13-14.)  The judge presiding over the habeas corpus proceeding

scheduled a hearing on the petition for August 18, 2020.  (*Id.* at 14.)

Shortly after Cook moved for a temporary restraining order in the habeas

corpus proceeding, Defendants allegedly became aware of the proceeding, at

which point they allegedly put "the full court press" on Cook with the objective of

---

[1] The complaint alleges that a check for success is a feature of the therapeutic community program in which an inmate's problematic behavior is mentioned during the morning meeting and the offending inmate must either admit to his behavior or write a 250-word essay.  (Doc. No. 1 at 13.)  Checks for success can lead to further consequences in the therapeutic community program, including "learning experiences," termination warnings, and termination from the program.  (*Id.*)  Termination from the program can in turn lead to a negative completion report, which might negatively affect an inmate's parole eligibility.  (*Id.*)

removing him from the therapeutic community program so as to defeat or weaken his petition for writ of habeas corpus. (*Id.* at 15.) As part of this alleged effort, Defendant Dunn temporarily transferred Cook out of the therapeutic community program and out of I-Block for approximately two weeks, which Cook alleges was done in retaliation for the filing of the habeas corpus petition. (*Id.* at 16-17, 19.)

At the time he was transferred out of the therapeutic community program, Cook allegedly had not received any significant misconduct charges in the program and had not committed any major rules violations that would warrant termination from the program. (*Id.* at 17.) The only infractions Cook had committed while in the program were "minute," such as staying on the phone past his scheduled time and inadvertently missing a group meeting. (*Id.*) Nevertheless, he was not given a termination warning before being transferred out of the program, despite the fact that other inmates who had been transferred out were given such a warning. (*Id.*) This included an inmate who had allegedly choked another inmate and an inmate who had fought another inmate, both of whom received a termination warning prior to their transfer out of the program. (*Id.*)

When he was transferred out of the therapeutic community program, Cook was housed in A-Block, which is allegedly a much more restrictive environment than I-Block, especially during the COVID-19 pandemic. (*Id.* at 19.) A-Block allegedly has more restrictions on phone privileges, recreation, visitation, and law

4

library use than I-Block.  (*Id.*)  The complaint alleges that A-Block was the most restrictive unit during the pandemic and that Cook would have preferred to be housed in a less restrictive environment.  (*Id.* at 20-21.)  The complaint further alleges that the conditions of A-Block violate the Eighth Amendment because there are bird droppings on the walls of the unit and the unit does not have appropriate ventilation.  (*Id.* at 21-22.)

Cook was allegedly reenrolled in the therapeutic community program on August 20, 2020, approximately thirteen days after being transferred out of the program.  (*Id.* at 25.)  Cook was not transferred back to I-Block when he was reenrolled in the program and was instead told that he would remain housed in A-Block and would be given the written work for the therapeutic community program so that he could complete it independently in his cell.  (*Id.*)  Cook alleges that the decision to keep him in A-Block while reenrolling him in the therapeutic community program was "evidence that this option could have been explored upon plaintiff expressing his concerns in writing to defendant Ms. Dunn before he was moved to the [therapeutic community] program initially."  (*Id.*)  It is also evidence, according to Cook, that Dunn "blatantly disregarded both plaintiff's mental [and] physical health" when he was first moved to I-Block and subsequently moved to A-Block, "which essentially deprived [him] of the chance to elect a more sanitary and less restrictive housing unit."  (*Id.*)  Thus, Cook alleges, the conditions of A-

Block were forced upon him, which he asserts constitutes intentional infliction of emotional distress.  (*Id.*)

Cook alleges that two more incidents occurred after he was reenrolled in the therapeutic community program that amount to retaliation in violation of the First Amendment.  First, he alleges that from November 15, 2020 to November 23, 2020, he refused to have his temperature taken during COVID-19 screening protocols and that, as a result, he was "retaliated against via not being permitted to shower, use the phone, or receive his commissary." (*Id.* at 32.)  He was allowed to resume normal activities when he "allowed himself to be subjected" to the procedures.  (*Id.*)

Second, Cook alleges that he was transferred to a different cell in A-Block on November 26, 2020 that was formerly occupied by an inmate named William McIntyre ("McIntyre").  (*Id.*)  McIntyre had been moved out of the cell when he tested positive for COVID-19 and was moved into quarantine.  (*Id.*)  Prison officials represented to Cook that the cell had been thoroughly cleaned prior to him moving in, but when he entered the cell he found prescription medication that was prescribed to McIntyre.  (*Id.*)  After finding the medication, Cook filed an emergency petition for injunctive relief in the state court asserting that CDC guidelines were not being followed in the prison.  (*Id.*)  In support of his petition, Cook taped the prescription medication that he had found to a piece of paper and

mailed it to the court.  (*Id.*)  Upon receiving the medication, the prothonotary of the court contacted the prison and informed officials that the court had received the medication from Cook.  (*Id.*)  Cook was subsequently charged with misconduct for mailing the medication, which he alleges was done "in retaliation."  (*Id.*)

Cook brings six claims for relief in his complaint: (1) that Defendants violated 42 Pa.C.S. § 6505 by removing him from the therapeutic community program so as to hinder his ability to obtain habeas corpus relief; (2) that Defendants violated his rights to due process and equal protection when they transferred him out of the therapeutic community program; (3) that Defendants retaliated against him in violation of the First Amendment; (4) that Defendants violated his right of access to the courts; (5) that Defendants committed intentional infliction of emotional distress; and (6) that Defendants were deliberately indifferent to the conditions of Cook's confinement in A-Block in violation of the Eighth Amendment.  (*Id.* at 29-30.)  He seeks a declaration that Defendants' actions violated the Constitution, injunctive relief requiring Defendants to "revise the rules of the [therapeutic community] program" to do away with checks for success, injunctive relief preventing Pennsylvania state officials from using his temporary transfer out of the therapeutic community program against him in his parole proceedings, criminal prosecution of the Defendants for violation of 42 Pa.C.S. § 6505, nominal damages, compensatory damages, and punitive damages.

(*Id.* at 30, 34-35.)  Cook moved for a preliminary injunction on April 1, 2021. (Doc. No. 7.)

Presently before the court is Defendants' motion to dismiss Cook's complaint for failure to state a claim upon which relief may be granted.  (Doc. No. 16.)  Briefing on the motion to dismiss is complete and it is ripe for the court's disposition.  Three more motions have been filed since the motion to dismiss.  On July 6, 2021, Defendants moved to stay discovery pending the resolution of the motion to dismiss.  (Doc. No. 21.)  On July 9, 2021, Cook moved for leave to file a supplemental complaint.  (Doc. No. 23.)  On October 1, 2021, Cook moved for "a speedy hearing of declaratory judgment and injunctive relief," which the court construes as a motion to expedite disposition of the motion to dismiss.  (Doc. No. 29.)  By separate order, the court has denied Cook's motion for preliminary injunction and motion for leave to supplement.  The motion to dismiss, motion to stay discovery, and motion to expedite will be addressed below.

## II.     Legal Standards

### A.     Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).  The

Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Under *Twombly* and *Iqbal*, pleading requirements have shifted to a "more heightened form of pleading." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  *Id.*  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (noting that when considering a motion to dismiss, courts may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading").

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears

beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

**B.  Civil Rights Statute, 42 U.S.C. § 1983**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

**III.      Discussion**

Defendants raise five arguments for dismissal in their motion to dismiss. First, they argue that Cook's retaliation claim should be dismissed because a two-week transfer out of the therapeutic community program is not a sufficient adverse action to state a retaliation claim upon which relief may be granted.  (Doc. No. 17 at 5.)  Second, they argue that Cook's claim under 42 Pa.C.S. § 6505 should be dismissed because it is a criminal statute that does not allow for civil causes of action by private citizens.  (*Id.*)  Third, they argue that Cook's retaliatory misconduct claim should be dismissed because there was some evidence to support the misconduct conviction against Cook.  (*Id.*)  Fourth, they argue that Cook's Eighth Amendment claim should be dismissed because Cook fails to allege a sufficient deprivation of life's necessities to support an Eighth Amendment claim. (*Id.*)  Fifth, they argue that Cook's due process claim should be dismissed because he fails to plead the existence of a protected liberty interest.  (*Id.*)  Defendants do not raise any argument as to Cook's equal protection, intentional infliction of emotional distress, or access to courts claims.  The court will address Defendants' five arguments *seriatim*.

**A.      Cook Fails to State a Retaliation Claim Based on His Transfer From the Therapeutic Community Program**

Defendants first seek dismissal of Cook's retaliation claim based on his transfer out of the therapeutic community program.  (Doc. No. 17 at 6-8.)  To state

a First Amendment retaliation claim upon which relief may be granted, a plaintiff must allege (1) that he engaged in constitutionally protected conduct; (2) that defendants took retaliatory action against him that would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) that there was a causal link between plaintiff's protected activity and defendants' retaliatory action. *Javitz v. Cty. of Luzerne*, 940 F.3d 858, 863 (3d Cir. 2019) (citing *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 747, 752 (3d Cir. 2019)).

In this case, Cook alleges that he was transferred to I-Block so that he could participate in the therapeutic community program, that he filed a habeas corpus petition in the state court seeking a transfer out of I-Block based on the conditions of his confinement there, that defendants then transferred him out of I-Block and the therapeutic community program in retaliation for his having filed the habeas corpus petition, and that he was subsequently reenrolled in the therapeutic community program thirteen days later but was allowed to remain in A-Block rather than being transferred to I-Block. (*See* Doc. No. 1.)

Defendants argue that a temporary transfer out of the therapeutic community program is not a sufficiently adverse action to support a retaliation claim upon which relief may be granted. (Doc. No. 17 at 6-8.) Cook argues in response that the transfer was a sufficiently adverse action because I-Block "is a lot less restrictive" than A-Block. (Doc. No. 19 at 5.) He further alleges that the

"potential negative impact" on his chances at obtaining parole was a sufficiently adverse action to state a retaliation claim. (*Id.* at 6.)

The court agrees with Defendants that Cook has failed to plead sufficient retaliatory action by Defendants to support a retaliation claim upon which relief may be granted. The complaint alleges that Cook's habeas corpus petition in the state court sought to transfer Cook out of I-Block and that, in response to the petition, Defendants transferred him out of I-Block. Thus, rather than retaliating against Cook, it appears that Defendants gave him exactly what he wanted. It is simply not plausible to state that Defendants' actions constituted retaliation for Cook filing a petition for writ of habeas corpus when they apparently gave him the exact relief that he sought in the petition. Accordingly, the court will dismiss the retaliation claim to the extent that it is based on Cook's transfer out of I-Block.

## B.    Cook's Claim Under 42 Pa.C.S. § 6505 Fails to State a Claim

Defendants next argue that Cook's claim under 42 Pa.C.S. § 6505 should be dismissed because the statute only imposes criminal penalties and private citizens do not have the power to bring criminal charges. (Doc. 17 at 8-9.) Defendants are correct. Section 6505 states that:

> Any person who shall fail or refuse to respond to a writ or to an order issued under this chapter, or who shall change the place of detention of any person for the purpose of defeating the writ, or shall, without express authorization from a judge of a court of record, recommit on substantially the same facts and circumstances any person set at large

14

upon a habeas corpus, or shall do any act for the purpose of defeating
the writ or the order, commits a misdemeanor of the second degree.

42 Pa.C.S. § 6505.  The statute does not by its terms create a civil cause of action,

and private citizens may not enforce criminal statutes through civil rights actions

under § 1983.  *Capogrosso v. Supreme Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir.

2009).  Accordingly, the court will dismiss the § 6505 claim.

### C.   Cook's Retaliation Claims Based on Facts Occurring After His Reenrollment in the Therapeutic Community Program Will Be Dismissed

Defendants next seek dismissal of Cook's retaliatory misconduct claim.

(Doc. No. 17 at 9-10.)  Cook clarifies in response that the retaliatory misconduct

claim and the other claims of retaliation that occurred after he was reenrolled in the

therapeutic community program were not "actually raised" in his original

complaint, as they were included "simply to support plaintiff's prayer for relief of

intervention by the court" by showing the retaliation that Cook was allegedly

continually experiencing.  (Doc. No. 19 at 15.)  Cook notes that his proposed

supplemental complaint attempted to raise the claims, but that they were not

actually raised in his original complaint.  (*Id.*)[2]

Accordingly, because Cook concedes that his complaint does not state an

independent retaliation claim based on the events that occurred after he was

---

[2] As noted above, the court has denied Cook's motion for leave to supplement his complaint by separate order.

reenrolled in the therapeutic community program, the court will dismiss the complaint to the extent that it is based on events that occurred during that time period.  (*See* Doc. No. 1 at 31-34.)

### D.    Cook's Eighth Amendment Claim Will Be Dismissed

The court will next consider Defendants' argument that Cook's Eighth Amendment claim should be dismissed for failure to state a claim.  In his Eighth Amendment claim, Cook asserts that A-Block is home to many pigeons and other birds that "decorate the walls and windows" with their droppings, and that exposure to the bird droppings exposes Cook and other inmates in A-Block to risk of bird-borne illnesses.  (Doc. 1 at 21-22.)  Cook further alleges that there is insufficient ventilation in the unit, and that the air that is circulated in the unit is permeated with bird droppings.  (*Id.*)

Cook's Eighth Amendment claim sounds in deliberate indifference to the conditions of his confinement.  To state a claim upon which relief may be granted for deliberate indifference to the conditions of confinement under the Eighth Amendment, a plaintiff must allege (1) that he was subjected to an objectively, sufficiently serious deprivation that resulted in the denial of minimal civilized measures of life's necessities and (2) that the defendant prison official was deliberately indifferent to inmate health or safety.  *Porter v. Pa. Dep't of Corr.*,

974 F.3d 431, 441 (3d Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Defendants argue that Cook's complaint fails to state an Eighth Amendment claim upon which relief may be granted because the alleged exposure to bird droppings and improper ventilation would not amount to violations of the Eighth Amendment.  (Doc. 17 at 10-14.)  The court disagrees, as courts in this district have allowed claims that were nearly identical to Cook's Eighth Amendment claim to proceed past the pleading stage.  *See, e.g.*, *Cooper v. Miller*, No. 1:20-CV-2430, 2021 WL 5112268, at *1, 7 (M.D. Pa. Nov. 3, 2021) (concluding that plaintiff's allegation that there was a pigeon infestation in SCI-Rockview that caused exposure to bird droppings and potential exposure to disease stated an Eighth Amendment claim upon which relief could be granted).

Nevertheless, the court will still dismiss Cook's Eighth Amendment claim because Cook fails to allege that Defendants were personally involved in the conditions of confinement giving rise to his claim.  A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018).  The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, for a supervisor to be liable for the actions of a subordinate,

17

there must be evidence of personal direction or actual knowledge and acquiescence.  *Id.*

Here, Cook alleges that the defendants were personally involved in the conditions of his confinement because they were all "well aware" of the conditions in A-Block.  Cook's allegation that Defendants were aware of the conditions, however, is not sufficient to allege the Defendants' personal involvement, as Cook fails to allege that any of the Defendants' actions helped to create the allegedly adverse conditions in A-Block or that they had the power to remedy the conditions.  *See Rode*, 845 F.2d at 1207 (noting that supervisory liability cannot be based solely on *respondeat superior* and must be based on personal direction or actual knowledge and acquiescence).  To the contrary, it appears from the allegations in the complaint that Defendants' authority did not extend beyond the management of I-Block and the therapeutic community program.  (*See* Doc. No. 1 at 10 (noting that Defendant Condo was the I-Block unit manager, that Defendant Brown was a counselor in the therapeutic community program, and that Defendant Dunn was the manager of the therapeutic community program.)  Accordingly, the court will dismiss Cook's Eighth Amendment claim for failure to allege the Defendants' personal involvement.

E.     **Cook's Due Process Claim**

The court will next consider whether Cook's due process claim should be dismissed.  Cook's due process claim alleges that he was denied due process when Defendants transferred him out of the therapeutic community program.  (Doc. No. 1 at 29.)

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  As a threshold matter, "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie." *Mudric v. Attorney Gen.*, 469 F.3d 94, 98 (3d Cir. 2006) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)).  When considering whether a liberty interest is implicated, a Court's focus must be on the "the nature of the deprivation" experienced by the prisoner.  *Sandin v. Conner*, 515 U.S. 472, 481 (1995).  "States may under certain circumstances create liberty interests which are protected by the Due Process Clause, . . . [b]ut these interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483-84 (internal citations omitted).

In this case, Defendants argue that Cook's due process claim should be dismissed because he fails to allege a protected liberty interest.  (Doc. No. 17 at

14-15.)  Cook argues in response that he has pleaded a protected liberty interest because enrollment in the therapeutic community program was made a condition for him to obtain early parole, and thus "termination from the program and a negative report as a result stood the chance to effect [his] parole eligibility."  (Doc. No. 19 at 8.)

The court agrees with defendants that Cook does not allege the existence of a protected liberty interest.  Cook asserts that the potential negative effect on his chances of obtaining parole create a protected liberty interest, but prisoners do not have a protected liberty interest in a potential early release from prison before the expiration of a valid sentence.  *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7 (1979).  The court will therefore dismiss Cook's due process claim for failure to state a claim upon which relief may be granted.

### F.    Cook's Intentional Infliction of Emotional Distress, Access to courts, and Equal Protection Claims

Although Defendants do not make any arguments for dismissal of Cook's intentional infliction of emotional distress, access to courts, or equal protection claims, the court will nonetheless review those claims under the screening provision of 28 U.S.C. § 1915(e)(2)(B)(ii), which requires federal courts to review complaints brought *in forma pauperis* and dismiss them "at any time" if the court determines that they fail to state a claim upon which relief may be granted.

Having conducted such a screening review, the court will dismiss Cook's intentional infliction of emotional distress claim.  To state a claim for intentional infliction of emotional distress, a plaintiff must allege that the defendant committed "extreme and outrageous conduct" that intentionally or recklessly caused the plaintiff severe emotional distress.  *Manley v. Fitzgerald*, 997 A.2d 1235, 1242 (Pa. Commw. Ct. 2010).  Extreme and outrageous conduct, for purposes of the tort, is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (1987)).  Here, Cook's intentional infliction of emotional distress claim is based entirely on his transfer from I-Block to A-Block.  (*See* Doc. 1 at 25 (alleging that "forcing the conditions of A-Block upon Plaintiff . . . establish[es] intentional infliction of emotional distress").)  A transfer from one housing unit of a prison to another is simply not outrageous enough to state an intentional infliction of emotional distress claim upon which relief may be granted, and the court will accordingly dismiss this claim.

The court will likewise dismiss Cook's access to courts claim.  To state a claim for violation of access to the courts, a plaintiff must allege some action by defendants that caused an actual injury to the plaintiff's ability to litigate a

21

nonfrivolous legal claim. *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). Although Cook alleges that Defendants attempted to interfere with his ability to litigate his habeas corpus case in the state court, he does not allege that Defendants' actions caused any actual injury to his access to the courts, as it appears from the allegations in the complaint that he was able to repeatedly send petitions, motions, and evidence to the state court to support his claims.

The court will allow Cook's equal protection claim to proceed, however, as the court concludes that it states a claim upon which relief may be granted. Cook alleges that he was transferred out of the therapeutic community program without a termination warning while other similarly situated inmates were given warning before they were terminated from the program. This is sufficient to plead a class of one equal protection claim. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (holding that plaintiff may proceed on a class of one equal protection claim where he alleges that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment").

### G.    Leave to Amend Will Be Granted

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment

unless the amendment would be inequitable or futile.  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).  The court will grant Cook leave to amend as to all of the dismissed claims with the exception of the claim under 42 Pa.C.S. § 6505 because amendment of that claim would be futile.

### H.    The Motion to Stay Discovery and Motion to Expedite Will Be Denied

Having resolved the motion to dismiss, the court will deny defendants' motion to stay discovery as moot.  The motion seeks to stay discovery pending the court's resolution of the motion to dismiss, but the court has now decided the motion to dismiss and determined that Cook's equal protection claim will not be dismissed, making the motion to stay moot.  The court will likewise deny Cook's motion to expedite as moot given that the court has now decided the motion to dismiss.

## IV.   Conclusion

For the foregoing reasons, defendants' motion to dismiss is granted, Cook's complaint is dismissed in part, and Cook is granted leave to file an amended complaint.  An appropriate order follows.

s/ Sylvia H. Rambo
United States District Judge

Dated: November 30, 2021