IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FABIAN ALEXANDER COOK** | : | |
| **Plaintiff** | : | |
| | : | No. 1:21-cv-361 |
| v. | : | |
| | : | (Judge Rambo) |
| **SAM CONDO,** *et al.* | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court are Defendants' motions to dismiss the second amended complaint for failure to state a claim upon which relief may be granted. For the reasons that follow, the motions will be granted, and the second amended complaint will be dismissed with prejudice.

**I.      Background and Procedural History**

*Pro se* Plaintiff Fabian Alexander Cook ("Cook") initiated this case through the filing of a civil rights complaint under 42 U.S.C. § 1983 on February 26, 2021, against Defendants Sam Condo ("Condo"), Justin Brown ("Brown"), and Michelle Dunn ("Dunn"), all of whom are employed at the State Correctional Institution-Rockview ("SCI-Rockview"), the prison where Cook is currently incarcerated and where he was incarcerated at all relevant times. (Doc. No. 1.) Cook's claims in the original complaint arose from his transfer into the prison's therapeutic community program, temporary transfer out of the program, and subsequent transfer back into the program. (*Id.*)

Although the complaint appeared to raise a claim that misconduct charges were brought against Cook in retaliation for Cook filing a habeas corpus petition in Pennsylvania state court, Cook subsequently clarified that such a retaliatory misconduct claim was not "actually raised" in his original complaint, and that the allegations that appeared to be connected to this claim were included "simply to support plaintiff's prayer for relief of intervention by the court" by showing the retaliation that Cook was allegedly continually experiencing.  (Doc. No. 19 at 15.)  Defendants moved to dismiss the complaint on June 9, 2021.  (Doc. No. 16.)

Cook moved to supplement his complaint on July 9, 2021, seeking to add claims against Joshua Stover ("Stover") a lieutenant in SCI-Rockview; Jennifer Alexander ("Alexander"), a unit manager in SCI-Rockview; Mark Garman ("Garman"), the former superintendent of SCI-Rockview; Leo Dunn, a member of the Pennsylvania Board of Probation and Parole;[1] and Terry Smith ("Smith"), a member of the Pennsylvania Board of Probation and Parole.  (Doc. No. 14 at 2.)  Specifically, Cook sought to raise a claim against Stover alleging that Stover had filed a misconduct charge against Cook in retaliation for Cook mailing evidence to the state court as part of his habeas corpus case.  (*Id.*)  He also sought to raise

---

[1] Because another person with the last name "Dunn" is already named as a defendant in this action, the court will refer to Michelle Dunn and Leo Dunn by their full names throughout the remainder of this opinion except where context makes this unnecessary.  There is no allegation that Michelle Dunn and Leo Dunn are related to one another.

2

claims against the other Defendants for allegedly interfering in Cook's parole process. (*Id.*) The court denied the motion for leave to supplement on November 30, 2021, concluding that the proposed claims against Defendants Alexander, Garman, Dunn, and Smith were unrelated to the subject matter of the original complaint and that the proposed claims against Stover were properly raised through a motion for leave to amend the complaint rather than a motion for leave to supplement. (Doc. No. 33.)

On the same day, the court also addressed Defendants' motion to dismiss. (*See* Doc. No. 35.) The court determined that Cook's original complaint stated an equal protection claim upon which relief could be granted arising from Cook's transfer out of the therapeutic community program but that the complaint otherwise failed to state a claim upon which relief could be granted. (*Id.*) The court granted Cook leave to amend his complaint to cure the pleading deficiencies identified by the court. (Doc. No. 36.)

Cook filed an amended complaint on January 4, 2022. (Doc. No. 37.) In addition to the claims against Defendants Condo, Brown, and Michelle Dunn, the amended complaint also included the claims against Defendants Stover, Alexander, Garman, Leo Dunn, and Smith that the court previously rejected in denying Cook's motion for leave to supplement. (*See id.*) Cook's equal protection claim was not included in the amended complaint. (*See id.*)

3

Defendants moved to dismiss the amended complaint through separate motions on January 18, 2022, and March 8, 2022. (Doc. Nos. 44, 56.) Cook moved for leave to file a second amended complaint. (Doc. No. 55.) The court granted the motion for leave to amend on May 16, 2022 and denied the motions to dismiss as moot. (Doc. No. 70.) Cook's second amended complaint was docketed that day. (Doc. No. 69.) The second amended complaint names Condo, Michelle Dunn, Brown, Stover, Alexander, Leo Dunn, Garman, Smith, N. Lehman ("Lehman"), and Kerri Kross ("Kross") as defendants. (*Id.* at 3.)

According to the allegations in the second amended complaint, Defendants Condo, Brown, and Michelle Dunn transferred Cook to I-Block, which is a dormitory-style housing unit, in May 2020, so that he could complete the prison's therapeutic community program. (*See id.* at 6.) Cook challenged the conditions of his confinement in I-Block through a state petition for writ of habeas corpus in the Centre County Court of Common Pleas ("the state court") in June 2020, alleging that the conditions of his confinement placed him at greater risk of contracting COVID-19. (*Id.*) As part of his habeas corpus petition, Cook alleged that the dormitory style housing of I-Block and the difficulty of practicing social distancing in the block increased his COVID-19 risk. (*Id.* at 6-7.) Cook allegedly did not seek removal from I-Block to another housing unit in his habeas corpus petition;

instead, he only sought "to avoid being placed on this housing unit in the first place." (*Id.* at 7.)

Once Cook adjusted to the therapeutic community program, he found that the communal setting of I-Block "came as a great relief to his depression as oppose[d] to being confined to a cell [for the] majority of the day." (*Id.*) Inmates in I-Block were allegedly given more freedom and privileges than inmates in other housing units, including unlimited phone calls, the ability to shower freely, no confinement to a cell, and the ability to move around the housing unit freely. (*Id.*) Cook states that he "would have undoubtedly enjoyed the opportunity to complete" the therapeutic community program from I-Block or "choose another housing unit less restrictive and more sanitary than A-Block." (*Id.*)

Cook was allegedly transferred out of I-Block and the therapeutic community program on August 6, 2020, for missing a group session that he was required to attend as part of the program. (*Id.* at 8.) Cook alleges that several other inmates in the therapeutic community program committed more serious rules violations than this but were not transferred out of the program. (*Id.* at 9.) Cook alleges that the more serious discipline he received violated his right to equal protection because he was not treated the same as similarly situated inmates. (*Id.*) Cook further alleges that the transfer was done at the direction of Defendant

Garman, the prison's superintendent, as retaliation for Cook having challenged the conditions of his confinement through his state habeas corpus petition. (*Id.* at 12.)

Immediately after Cook's transfer out of I-Block, counsel for the government in the state habeas corpus proceeding moved to deny his request for transfer out of I-Block as moot. (*Id.*) The state court granted this request. (*Id.*) Cook allegedly continued to be housed in A-Block following the transfer, despite the fact that he "would have preferred to be returned" to I-Block so that he could enjoy the greater privileges enjoyed by inmates in that housing unit. (*Id.* at 13-14.)

On November 26, 2020, Cook was allegedly transferred to a different cell in A-Block that was formerly occupied by an inmate named William McIntyre ("McIntyre"). (*Id.* at 15.) McIntyre tested positive for COVID-19 shortly before he was moved out of the cell. (*Id.*) Prison officials represented to Cook that the cell had been thoroughly cleaned prior to him moving in, but when he entered the cell he found prescription medication that was prescribed to McIntyre. (*Id.*) After finding the medication, Cook filed an emergency petition for injunctive relief in the state court asserting that CDC guidelines were not being followed in the prison. (*Id.*) In support of his petition, Cook taped the prescription medication that he had found to a piece of paper and mailed it to the court. (*Id.*) Defendant Stover charged Cook with misconduct for mailing the medication. (*Id.*) Stover allegedly told Cook sometime after the charge was filed that he did not want to charge Cook

with misconduct, but that Defendant Garman had ordered him to do so because Garman was "pissed" that Cook had mailed the medication. (*Id.*) Defendant Lehman, who was the shift supervisor on duty when Stover issued the misconduct, allegedly joined in Garman and Stover's retaliatory efforts by failing to reduce the disciplinary charges against Cook and by refusing to refer the matter for informal resolution. (*Id.* at 19-20.) Defendant Kross, the hearing examiner who presided over Cook's subsequent disciplinary hearing, also allegedly joined in the retaliation by finding Cook guilty of the underlying misconduct charge and sentencing him to disciplinary custody in the prison's restricted housing unit. (*Id.* at 21-22.)

The second amended complaint alleges that Defendant Garman reviewed the disciplinary proceedings that occurred and approved them in retaliation for Cook mailing evidence to the state court because Garman knew that the disciplinary sanction would be used against Cook in his upcoming parole proceedings. (*Id.* at 29.) Cook acknowledges he is "unsure whether or not Defendant Garman elicited and verbally directed" the Defendants involved in the parole process—Alexander, Leo Dunn, and Smith—to participate in the alleged retaliation, but he alleges that Garman's actions in approving the disciplinary sanction essentially amounted to a direction to those Defendants to participate. (*Id.*)

Defendants Alexander, Leo Dunn, and Smith—all of whom were involved in the decision of whether to grant Cook parole—allegedly told Cook that they

could not support his parole application because of the misconduct sanction. (*Id.* at 30.) Defendant Alexander, who was the unit manager of Cook's housing unit in A-Block at all relevant times, also allegedly retaliated against Cook by denying him multiple requests to switch cellmates. (*Id.* at 32.)

Cook alleges that on May 3, 2021, he had a parole interview with Defendants Leo Dunn and Smith, both of whom served on the Pennsylvania Board of Probation and Parole. (*Id.* at 35.) Dunn allegedly told him that but for the misconduct charge against him and the prison's negative recommendation, "it would have been an easy" decision to grant Cook parole. (*Id.* at 35.) Dunn allegedly stated, however, that he could not "override" the prison's negative recommendation, and accordingly voted against granting Cook parole. (*Id.*) Cook alleges that the denial of his parole by Dunn and Smith constituted retaliation for Cook pursuing his case in the state court. (*Id.* at 36.) Cook asserts that Dunn and Smith's refusal to override the prison's negative parole recommendation constitutes active participation in the purported scheme to retaliate against him "as it allows and supports" the other Defendants' allegedly retaliatory acts. (*Id.*)

Cook's second amended complaint asserts four claims: (1) that all Defendants violated Cook's rights under the First Amendment by retaliating against him for litigating his habeas corpus case in state court; (2) that Defendants

8

Condo, Brown, and Michelle Dunn violated Cook's right to equal protection when they transferred him out of the therapeutic community program; (3) that Defendants Garman, Alexander, Leo Dunn, and Smith violated Cook's right "to be free from multiple punishment" when they considered his misconduct charge in denying him parole; and (4) that Defendants Alexander, Garman, Leo Dunn, Smith, and Kross violated his right to be free from cruel and unusual punishment and his right to due process. (*Id.* at 39.)

Defendants Condo, Michelle Dunn, Brown, Stover, Alexander, Kross, Lehman, and Garman moved to dismiss the second amended complaint on May 20, 2022. (Doc. No. 77.) Defendants Leo Dunn and Smith moved to dismiss the second amended complaint on June 3, 2022. (Doc. No. 83.) Briefing on the motions is complete and they are ripe for review. (*See* Doc. Nos. 82, 89, 92, 93.)

## II.     Legal Standards

### A.     Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Twombly* and

*Iqbal*, pleading requirements have shifted to a "more heightened form of pleading." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  *Id.*  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters

of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)).

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

**B.     Civil Rights Statute, 42 U.S.C. § 1983**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  *See* 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

### III. Discussion

#### A. Retaliation

The court will first address Cook's retaliation claim. To state a First Amendment retaliation claim upon which relief may be granted, a plaintiff must allege (1) that he engaged in constitutionally protected conduct; (2) that defendants took retaliatory action against him that would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) that there was a

causal link between plaintiff's protected activity and defendants' retaliatory action. *Javitz v. Cty. of Luzerne*, 940 F.3d 858, 863 (3d Cir. 2019) (citing *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 747, 752 (3d Cir. 2019)). If the plaintiff makes out a prima facie case of retaliation, the defendant may avoid liability by showing that he would have taken the same action regardless of whether the plaintiff had engaged in protected conduct. *Baloga*, 927 F.3d at 752.

The court finds that the second amended complaint fails to state a retaliation claim upon which relief may be granted. To the extent that the retaliation claim is based on Cook's transfer out of the therapeutic community program and I-Block, the claim suffers from the same pleading defects as the original complaint. As the court stated in dismissing the original complaint:

> The court agrees with Defendants that Cook has failed to plead sufficient retaliatory action by Defendants to support a retaliation claim upon which relief may be granted. The complaint alleges that Cook's habeas corpus petition in the state court sought to transfer Cook out of I-Block and that, in response to the petition, Defendants transferred him out of I-Block. Thus, rather than retaliating against Cook, it appears that Defendants gave him exactly what he wanted. It is simply not plausible to state that Defendants' actions constituted retaliation for Cook filing a petition for writ of habeas corpus when they apparently gave him the exact relief that he sought in the petition.

(Doc. 35 at 14.) Thus, the retaliation claim against Condo, Brown, and Michelle Dunn will be dismissed because Cook has not alleged that Defendants committed a retaliatory act sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *See Javitz*, 940 F.3d at 863.

13

Cook's retaliation claim also fails to state a claim to the extent that it is based on allegedly retaliatory misconduct charges and proceedings against him. The misconduct charges against Cook arose from him sending prescription medication through the mail, and the second amended complaint acknowledges that he did in fact send the prescription medication through the mail as charged. (*See* Doc. No. 69 at 15.)  Thus, the retaliatory misconduct charge fails because it is clear from the second amended complaint that prison officials would have taken the same action regardless of whether Cook's actions were constitutionally protected, as the misconduct charge was motivated by the legitimate penological interest of punishing and deterring inmates for misconduct.  *See Baker v. Williamson*, 453 F. App'x 230, 235 (3d Cir. 2011) (noting that retaliatory misconduct claim failed where prisoner plaintiff admitted that he was guilty of misconduct because such an admission showed that the misconduct charge was brought for a legitimate penological purpose); *Bonaparte v. Beck*, 441 F. App'x 830, 832-33 (3d Cir. 2011) (noting that prisoner plaintiff's guilt with respect to underlying misconduct charge is an affirmative defense to claim of retaliatory misconduct); *Nifas v. Beard*, 374 F. App'x 241, 244 (3d Cir. 2010) (holding that retaliatory misconduct claim fails when there is some evidence to support the misconduct charge); *Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002) (holding that retaliatory misconduct charge failed because there was a quantum of

evidence indicating that prisoner plaintiff committed underlying misconduct, and the decision to sanction him for misconduct was therefore based on a legitimate penological interest).

Cook's retaliation claim against the three Defendants involved in his parole process—Alexander, Leo Dunn, and Smith—likewise fails to state a claim upon which relief may be granted as there is no allegation in the complaint of a causal connection between Cook's protected conduct and the Defendants' actions. Cook's retaliation claims are based on a theory that Defendant Garman directed all other Defendants to retaliate against Cook, but Cook acknowledges in the second amended complaint that he is "unsure whether or not Defendant Garman elicited and verbally directed Defendants Alexander, Leo Dunn, or Smith to become participants in his systematic retaliation scheme against Plaintiff." (Doc. No. 69 at 29.) Thus, the retaliation claim against Alexander, Leo Dunn, and Smith is based purely on Plaintiff's speculation, which is insufficient to state a claim upon which relief may be granted. *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991).

Finally, Cook's retaliation claim against Defendant Garman fails to state a claim because Cook does not allege any direct retaliation claim against Garman and instead alleges that Garman directed the other Defendants to retaliate against Cook. Because Cook fails to state a retaliation claim upon which relief may be

15

granted against any of the other Defendants, the allegation that Garman directed the actions by the other Defendants also fails.

### B. Multiple Punishment

The court will next consider Cook's claim that he was subjected to multiple punishments for the same offense when he was given disciplinary sanctions for misconduct and the misconduct was then considered in denying him parole. (*See* Doc. No. 69 at 39.) This claim will be dismissed because it is without legal merit. "[A] prison disciplinary hearing is not a prosecution for Double Jeopardy Clause purposes." *United States v. Newby*, 11 F.3d 1143, 1144 (3d Cir. 1993). Thus, the fact that a prisoner has faced disciplinary sanctions for misconduct does not prevent the prisoner from facing subsequent penalties or consequences for the same misconduct. *See id.* (holding that disciplinary sanction imposed on prisoner did not bar subsequent criminal prosecution for the same conduct).

### C. Cruel and Unusual Punishment and Due Process Claims

Turning to the claims that Defendants Alexander, Garman, Leo Dunn, Smith, and Kross violated Cook's right to be free from cruel and unusual punishment and violated his right to due process, the court will dismiss these claims for failure to state a claim. The punishments imposed on Cook—60 days of disciplinary confinement in the prison's restricted housing unit and denial of parole—are not sufficiently serious to constitute cruel and unusual punishment

16

under the Eighth Amendment. *See, e.g.*, *Thomas v. Rosemeyer*, 199 F. App'x 195, 198 (3d Cir. 2006) (holding that confinement in restricted housing unit did not constitute cruel and unusual punishment); *United States ex rel. Lawson v. Cavell*, 425 F.2d 1350, 1352 (3d Cir. 1970) (holding that prisoner was not subjected to cruel and unusual punishment when he was required to serve his maximum sentence rather than being released on parole).

As for the due process claim, the court will dismiss it because the court cannot discern the basis of the claim. Cook states in conclusory fashion that the Defendants violated his right to "due process (both substantive and procedurally)" but he does not tie this claim to any of the allegations in the second amended complaint, and unlike the cruel and unusual punishment claim, the context of the claim does not make the basis for the due process claim immediately apparent. The court will not parse the second amended complaint to construct a due process claim on Cook's behalf. *See, e.g.*, *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006) ("Judges are not like pigs, hunting for truffles buried in the record." (quoting *Albrechtsen v. Board of Regents of University of Wisconsin Sys.*, 309 F.3d 433, 436 (7th Cir. 2002))).

### D. Equal Protection

Finally, the court will address Cook's equal protection claim, which is based on his transfer out of the therapeutic community program. (*See* Doc. No. 69 at 39.)

17

Cook alleges that he was transferred out of the therapeutic community program for missing one group meeting but that other similarly situated inmates were given less severe discipline for more severe transgressions. (*Id.* at 8-9.) Cook names four inmates who were given warnings prior to being terminated from the program, three of whom were accused of getting into physical altercations with other inmates. (*Id.* at 9.) Cook alleges that while these inmates were given warnings, he was terminated from the program without a termination warning. (*Id.* at 10.)

Defendants argue that dismissal of this claim is warranted because the allegations in the second amended complaint indicate that Cook was given progressive discipline prior to termination from the program. (Doc. No. 82 at 8.) Defendants also argue that dismissal is appropriate because the sanction Cook received—a temporary transfer out of the therapeutic community program—is at most a *de minimis* violation of his constitutional rights. (*Id.* at 9.)

Although the court previously allowed Cook's equal protection claim to proceed after Defendants failed to raise any arguments for dismissal of the claim in their motion to dismiss the original complaint, (*see* Doc. No. 35 at 20-22), the court is persuaded that dismissal of the claim is appropriate because any violation of Cook's constitutional rights was *de minimis*. *See Bell v. Wolfish*, 441 U.S. 520, 539, n.21 (1979) ("There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned." (quoting *Ingraham v. Wright*, 430 U.S. 651,

18

674 (1977))). Cook has acknowledged that his transfer out of the therapeutic community program lasted for only approximately two weeks before he was reenrolled in the program. (*See* Doc. No. 1 at 19, 25.) This short-term transfer is not sufficient to support a claim that Cook's constitutional rights were violated.

In sum, the court finds that Cook's second amended complaint fails to state a claim upon which relief may be granted in its entirety. The court will dismiss the second amended complaint on that basis.

### E. Leave to Amend Will Be Denied

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

Here, the court finds that further amendment would be futile. Cook has had multiple opportunities to state a claim upon which relief may be granted, and with the exception of his equal protection claim, he has failed to do so at every opportunity. Further amendment of these claims would therefore be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting that leave to amend may be denied as futile based on a litigant's repeated failure to cure pleading deficiencies through previously allowed amendments). The court additionally finds that

amendment of the equal protection claim would be futile because any violation of Cook's right to equal protection was *de minimis*.

## IV. Conclusion

For the foregoing reasons, defendants' motions to dismiss are granted and Cook's second amended complaint is dismissed with prejudice. An appropriate order follows.

s/ Sylvia H. Rambo
United States District Judge

Dated: January 18, 2023